## SAMUEL G. STINSON *vs.* JOSEPH PRESCOTT, Administrator.

A bond given by a husband for the board and expenses of his insane wife at a hospital is terminated by his death; and if the surety pays for her subsequent support at the hospital, he cannot recover the amount from his administrator.

ACTION OF CONTRACT against the administrator of the estate of William P. Prescott to recover money paid for the support since his death, of Lucy A. Prescott, his wife, at the McLean

Asylum for the Insane, to which she was admitted in September 1854, when the following obligation was signed by her husband as principal, and the plaintiff as surety:

"In consideration of Mrs. Lucy A. Prescott being admitted a patient into the McLean Asylum for the Insane at our request, we, the undersigned, promise the Massachusetts General Hospital to pay the treasurer thereof at said asylum, quarterly on the first days of January, April, July and October, with interest after said days respectively, the rate of board determined by the trustees of said hospital, and stated in the order of admission hereunto affixed," namely, four dollars a week; "to provide or pay for all requisite clothing and other things necessary or proper for the health and comfort of said patient; to remove said patient when discharged; to reimburse funeral expenses in case of death; and if removed uncured, against the advice and consent of the superintendent, before the expiration of three calendar months, to pay board for thirteen weeks."

The case was submitted to the judgment of the court upon facts agreed by the parties, which are stated in the opinion.

*C. E. Allen,* for the plaintiff, cited *Milldam Foundry* v. *Hovey,* 21 Pick. 441; *Appleton* v. *Bascom,* 3 Met. 171; Bac. Ab. Executors, P. 1; Chit. Con. (8th Amer. ed.) 96; 1 Parsons on Con. 111, note; 2 Parsons on Con. 45; 2 Williams on Executors, (4th Amer. ed.) 1466; *Wentworth* v. *Cock,* 10 Ad. & El. 42; *Stebbins* v. *Palmer,* 1 Pick. 78; *Green* v. *Young,* 8 Greenl. 14.

*J. P. Healy,* for the defendant, cited Chit. Con. 154; *Blades* v. *Free,* 9 B. & C. 167.

SHAW, C. J. Upon the facts agreed in this case, the court are of opinion that the action cannot be maintained. It is brought by the plaintiff on the ground that as surety of William P. Prescott, the defendant's intestate, he has paid money to the McLean Asylum, a hospital for the insane. It appears that in 1854 Lucy Ann Prescott, wife of said intestate, was admitted to the said hospital for relief and support; that thereupon William P. Prescott, the husband of the patient, signed an obligation with the plaintiff as surety, admitting that said Lucy was placed in the asylum at their request, and promising the trustees of the

Massachusetts General Hospital (of which the McLean Asylum for the Insane is one department) to pay for the board, &c., of the said patient. William P. Prescott, the husband, died on the 22d of November 1855, but Mrs. Prescott, the patient, continued at the asylum till November 1856. Whether her board was paid from November 1855, the decease of the husband, to the end of the quarter, does not appear. The trustees made a claim for board from the 1st of January 1856 to the removal of Mrs. Prescott in November 1856. The bill was made out as against the plaintiff as surety in the above stated obligation. The defendant, administrator of the intestate, refused to pay the same, and thereupon the plaintiff settled the account by paying $125. This must have been by compromise, the sum paid being about five eighths of the sum demanded.

It seems to be proper first to ascertain the nature and character of the intestate's liability to the trustees of the hospital, and with that view to look at the terms of the obligation and the relations in which the parties stood to each other. At the time of the admission of the wife to the asylum, the husband was bound for her support in sickness or in health, at his own house or at a hospital. The legal liability, if not technically the sole consideration of his promise, was apparently the moving cause, without which there is no reason to presume that he would have requested her admission or bound himself to pay for her support. By its terms it was a contingent and continuing promise; it must terminate with her life, because she could no longer be supported. We think it was made on a consideration which was also continuing and must terminate with the life of the husband, because then the marital relation and liability to support her ceased, and the grounds on which the obligation was undertaken ceased with it. The civil condition of the patient was thereby changed. Instead of being a feme covert, she became independent, qualified to act in her own right. She became liable for her own support; and so certain kindred if any, the town of her settlement, and last of all the town of her actual residence, when she stood in need of relief, became liable, who were not liable during the life of the

husband.   He entered into the obligation to support his wife in that particular manner, because it was his duty to support her somewhere, and he must be presumed to intend this obligation to be commensurate with that duty.

Many cases were cited to show that a man may by his contracts bind his personal representatives to pay money or perform other duties, warrant titles, and the like.   Undoubtedly such obligations will be binding, but it is where such is the apparent intent and of course the legal effect of the contract.

If the husband's liability under the contract is only coextensive with his legal duty, it may be asked why was any special obligation necessary or required.   The answer is, that the trustees might have evidence of the husband's admitted liability to pay them; and also to give collateral security, beyond his own personal responsibility, that what he had undertaken to do should be done.

The conclusion to which we come, as to the construction of the obligation, is strengthened by the consideration, that if the liability of the estate was not limited to his own life, it was without limit, except that of the life of the wife, and he must be held bound if she should remain in the asylum a long series of years after his death, which is too extravagant to be supposed the true intent of the parties.   It is a case where the generality of the words of promise is qualified and limited by the recitals, the subject matter, and the relations of the parties at the time of the contract.

The promise of the present plaintiff being that of a surety only, and that of the husband appearing on the face of the paper as principal, the court are of opinion that the obligation of the plaintiff did not extend beyond that of his principal; and therefore, had he defended the suit commenced against him, he must have prevailed.   He had distinct notice from the defendant, the administrator, that he did not consider the estate of his intestate liable for this claim, and should not consent to pay it. We think he paid voluntarily, in his own wrong, and such payment establishes no claim against the estate of his principal for reimbursement.                    *Judgment for the defendant.*